DE LONG et al. v. DE LONG HOOK & EYE CO.

(Supreme Court, Appellate Division, First Department. June 12, 1896.)

1. TRADE NAMES—INFRINGEMENT—INJUNCTION.
   A judgment restraining a corporation from using the name of its president because plaintiff, who was of the same name, had previously put his goods on the market under that name, and the use by the corporation of such name was intended to and did deceive the public, does not affect the right of the president to retire from the corporation and engage in the same business on his own account in his own name, so long as he does not infringe plaintiff's trade-mark, though the use of his name in such business may result in confusion in the public mind. Patterson, J., dissenting.

2. NAME—USE—TRANSFER TO CORPORATION.
   A person who lends to a corporation the use of his name does not thereby lose the right to use it afterwards in his own business.

Appeal from special term, New York county.

Action by Frank A. De Long and others against the De Long Hook & Eye Company. From an order adjudging Oscar A. De Long guilty of contempt of court, he appeals. Reversed.

For decision on application for injunction, see 32 N. Y. Supp. 203, modified by 35 N. Y. Supp. 509.

Argued before VAN BRUNT, P. J., and WILLIAMS, PATTERSON, and O'BRIEN, JJ.

Edmund Wetmore, for appellant.
Frederic R. Coudert, for respondents.

O'BRIEN, J. Although it was claimed upon the motion that the appellant was in fact conducting the business of the De Long Hook & Eye Company, and that, by indirection, he was attempting to do for the company that which the latter had been enjoined from

doing, still we think that the facts presented show that, having resigned from the company, the appellant, on his own account, for his own benefit, and in a manner entirely distinct from the company, is carrying on the hook and eye business. Unquestionably, if it appeared that the business of the appellant was that of the company, and that it was but another means of carrying on the unlawful competition enjoined, then the fact that it was done in another way would subject the person thus engaged to punishment. Morton v. Superior Court, 65 Cal. 496, 4 Pac. 489. In that case the act forbidden was the maintenance of a dam, and an officer of the company enjoined for maintaining the structure, who resigned, and then erected the dam, was held to have been guilty of a contempt, because manifestly doing .the precise act which was forbidden. If, therefore, the appellant here, while apparently in his own name, was engaged in the interest of the company in doing the very thing which it had been enjoined from doing, then the principle of that case would be applicable. It is all-important, therefore, to define precisely what persons and what acts were enjoined. In the suit against the defendant corporation, what was enjoined was the use in any manner by that corporation of the name "De Long." It was said in the opinion at special term: "There is no objection to the defendant [the corporation] designating the hooks sold by them as the 'Oscar A. De Long Hook.'" This expression is relied upon by the appellant now, as it was by the corporation at the time of settling the decree, as authority for the right of the corporation to sell their wares as the "Oscar A. De Long Hook." As it was seen, however, when settling the decree, that not only would this introduce confusion, but might prevent the plaintiffs from obtaining the relief to which they were entitled, by permitting the corporation which had fraudulently endeavored to divert the plaintiffs' business to succeed in that effort, this expression was withdrawn, and the decree as entered enjoined the use by the corporation of the name "De Long" in connection with its business in any way whatever. Although the decree at special term, and as affirmed by the general term, was clear and sweeping in its injunction on the corporation from using, in connection with the hook and eye business, the name "De Long," in the opinions of both courts there was a recognition of the distinction between the use of such name by the corporation and the use by the appellant of his own name in connection with his own business. Thus, the general term modified the decree of the special term by limiting its restraining clause as follows:

"But nothing herein shall operate to prevent the defendant from manufacturing and selling hooks and eyes put up in a form which shall not violate the trade-mark of the plaintiffs, or have the effect to induce the ordinary purchaser to buy its goods believing them to be manufactured by the plaintiffs."

It is claimed that, in violation of the terms of the decree, the appellant has made and sold goods of such a character, and put up in such a way, as to constitute a fraudulent and unlawful competition in business with the plaintiffs, and that the effect will be to induce the public to buy goods sold by him in the belief that they were the

plaintiffs'. This claim we do not think is sustained, because, while there are certain features common to the business, such as carding the hooks, etc., which any one engaging in the hook and eye business would have a perfect right to employ, we can find, outside of such general features, no act of the appellant which can be regarded as an attempt to imitate fraudulently the plaintiffs' goods, or fraudulently to induce the public to believe that they were purchasing the plaintiffs' goods; it being evident that the confusion in the public mind which has ensued from the appellant's entering upon the business is due entirely to similarity in name.

If we eliminate, then, because justified, the idea that the appellant was engaged in carrying on the business of the defendant corporation in a manner that had been enjoined, and assume, as we think the affidavits show, that he is now conducting his own business in his own name, the question really presented is whether, in using the designation "Oscar A. De Long's Hook," he has violated the letter or spirit of the injunction. This did not enjoin Oscar A. De Long from doing business in his own name, or from selling any kind of hooks and eyes that any other person might lawfully sell, or from designating those made and sold by him, and having peculiarities designed by him, as "Oscar A. De Long's Hook." Although an officer and practically the owner of the corporation, Oscar A. De Long was not individually a party to the action against the corporation, and his individual rights were not the subject of adjudication; and while it is true that it was therein decided that he could not lend his name to a corporation, and thus infringe upon the plaintiffs' trade-mark which they had acquired in the name "De Long" in connection with the hook and eye business, there was no determination that Oscar A. De Long could not do business on his own account and in his own name. The extent to which the decree went, and to which it will be sustained, was in holding that neither directly nor indirectly could the corporation use the name "De Long" in connection with its business. We do not think, therefore, because he had so loaned the use of his name to the corporation, that he has forever lost the use of it in his own business, even though such business might be that of hooks and eyes, and even though the use of his name in that business might result in confusion in the public mind. Not only was there no injunction against the use of his own name in his own business, but the court, in an action to which he was not a party in his individual character, could not have made any such decree. As already said, if it had appeared that the business of the defendant corporation was now being carried on by Oscar A. De Long, who had adopted a name and employed methods which the corporation was enjoined from using, such acts would be a defiance of the decree, and would constitute a contempt, and be punishable, for the court will not permit that to be done indirectly which it has forbidden to be done directly. As stated, however, the facts do not warrant this conclusion; and, although the appellant commenced business immediately after the entry of the decree, it does appear that, before doing so, he resigned from the corporation, and that the latter is

in no way interested in, and has no voice in, the business which he is conducting solely for his own benefit.

The result, then, if this application is successful, will not be to punish him for what he did in connection with the corporation, for the proceeding cannot be regarded as against him as an officer or controlling stockholder of that corporation, but as against him for using his own name in his own business. The respondents frankly avow their right to this relief, and insist that in connection with the hook and eye business, even though conducted by himself, he could not use the name "De Long." As urged by them, "Oscar A. De Long, having applied his name to fraudulent purposes, placed the use thereof in jeopardy; and, the court having condemned the use of it in a certain and well-defined direction, he must now abide by the consequences of his improper conduct." This, we think, is more sweeping than the decree, and is going further than is sanctioned by reason or authority. What was enjoined was the use of the appellant's name in connection with a corporation engaged in the same business as the plaintiffs, which use introduced confusion and dishonest competition. Although this was condemned in the opinions and enjoined by the judgments, the former recognized the legal right of every man to use his own name, and the latter did not go to the extent of preventing the appellant from ever again engaging in the hook and eye or other business in his own name; and, as correctly claimed by the appellant, "a judgment to that effect would relate directly to the individual rights of Oscar A. De Long, and could not be determined in an action to which he was not a party. Besides, no such adjudication has been made, or could be legally made. There is no such thing as a forfeiture of a right by civil proceedings. Oscar A. De Long, in a suit brought against himself, might be perpetually enjoined from doing a certain thing, but that would not be a forfeiture of a right; and Oscar A. De Long has not been enjoined from making, selling, and advertising hooks and eyes under his own name. Such an adjudication would, in effect, create a new form of punishment, namely, a man might be deprived of a right he would otherwise possess of engaging in a lawful business under his own name."

As there was nothing, therefore, in the decree, which would interfere with the right of Oscar A. De Long to do business in his own name and for his own account, we fail to see why he cannot advertise such business in his own name, or on his letter heads, or on the cards containing his hooks. We do not think he is obliged to do business either anonymously or in the name of some one else, or refrain from placing his own name upon his letter heads or the cards which contain the hooks and eyes that he is selling in his own business and for his own account. The distinction between the use of the name "De Long" by a corporation in any way and by the appellant grows out of the fact that it was assumed fraudulently by the former, and belongs, as of right, to the latter; and, while the court could and did prohibit the use by the corporation of the name "De Long," it did not and could not in that action, to which appellant was not a party, enjoin him from using his own name. The

construction of the judgments for which the respondents contend, if followed to its logical consequences, is that because, in the suit against the corporation, the use by it of the name "De Long" was enjoined as fraudulent, this was an adjudication that no one formerly connected with the corporation, as having knowledge of the judgment, though his name was "De Long," could ever thereafter use the same in connection with his own business, more particularly if that business chanced to be that of hooks and eyes. We do not think that if Oscar A. De Long had used his own name on his own cards, in his own business, the plaintiffs would have a cause of action against him; nor do we see that the fact that there has been a suit brought and an injunction obtained against a company to which he loaned his name militates against his ability to resume his original right to engage in business on his own account and in his own name.

It not having been shown, therefore, that the appellant had in any way violated the decree, the order adjudging him guilty of contempt was erroneous, and should be reversed, with $10 costs and disbursements, and the motion denied, with $10 costs.

VAN BRUNT, P. J., and WILLIAMS, J., concur.

PATTERSON, J. (dissenting). This is an appeal from an order made at the special term, adjudging that Oscar A. De Long, the appellant, has disobeyed an injunction contained in a decree entered in the action above entitled, and further adjudging that such violation and disobedience were deliberate and intentional, and by reason thereof the said Oscar A. De Long is in contempt of this court, and imposing upon him a fine for the indemnity of the plaintiffs for the loss sustained by reason of the misconduct of said Oscar A. De Long, and directing a reference to ascertain what damages, costs, and expenses the plaintiffs have sustained by reason of the acts of the appellant adjudged to have been in disobedience of the decree referred to. It appeared before the court, on the plaintiffs' application to punish the appellant for contempt, that on the 8th day of January, 1895, a decree was entered in the action above mentioned, by which the defendant therein, the De Long Hook & Eye Company, was "enjoined from using, in selling or placing upon the market, in connection with hooks and eyes, the word or name 'De Long,' alone or with other words, in any manner which may produce deception or confusion in the public mind as to the identity of the goods sold by the plaintiffs and the defendant, respectively." Oscar A. De Long was the president of the defendant, the principal stockholder, the manager of its business, and substantially, according to his own statement, all there was of the corporation. An appeal was taken to the general term of the supreme court from the decree made at special term, and that decree was modified so that its restraining clause was limited by the following words, which were directed to be inserted in the special term decree, namely: "But nothing herein shall operate to prevent the defendant from manufacturing and selling hooks and eyes put up in a form which shall

not violate the trade-mark of the plaintiffs, or have the effect to induce the ordinary purchaser to buy its goods believing them to be manufactured by the plaintiffs." As the action in which the decree was entered was one between the plaintiffs and the corporation, the restraint in the special term decree ran also against the corporation, its clerks, servants, workmen, agents, attorneys, and all persons claiming under or through the defendant. Of such persons, Oscar A. De Long was one. After the entry of the order of the general term modifying the decree of the special term, Oscar A. De Long apparently separated himself from the corporation of which he was the president, and undertook the business of manufacturing and selling hooks and eyes ostensibly on his own account, and not in connection with the defendant corporation. It does not appear that that corporation really retired from business, but it does clearly appear that all the acts of Oscar A. De Long brought to the attention of the court in this proceeding, and considered as being in contempt of the decree, are individual acts of Oscar A. De Long. He attempts to justify them on two grounds: First, that, as an individual, he was not prohibited by the decree from engaging in the business of selling hooks and eyes of the general character of those made for and sold by the De Long Hook & Eye Company; second, that, as matter of fact, he has not made and sold goods of such a character, or put up in such a way, as would constitute a fraudulent and unlawful competition in business with the plaintiffs, or induce the public to buy goods sold by him in the belief that they were the product of the plaintiffs' manufacture.

It must be admitted that the decree of the special term, as modified by the general term, really contains no prohibition upon Oscar A. De Long carrying on business in selling hooks and eyes in a lawful way, and under his own proper name. In inhibition contained in the special term decree of the use of the name of De Long in any form or in any combination of words does not go to that extent. It was not intended by that adjudication to deprive Oscar A. De Long of the right to use his name in the conduct of his own business, whether it be that of selling hooks and eyes, or any other legitimate business in which he might be engaged; but it was intended that the defendant corporation and its servants and those who were acting under or for it should not engage in the manufacture or sale of hooks and eyes put up in any form which should violate the trademark of the plaintiffs, or induce the ordinary purchaser to buy such goods believing them to be manufactured by the plaintiffs. The claim now made on the part of Oscar A. De Long substantially is that although he was the president of the defendant corporation, and although he was enjoined, as connected with that corporation, from doing those things prohibited by the decree, yet that he may sever his connection with that corporation, and continue individually the business which he had conducted, and from doing which it had been enjoined, and acquire absolute immunity for all his acts, and compel the plaintiffs to institute a new action and seek a new decree against him for whatever wrong he may personally commit, and thus evade the consequences of his disobedience of the de-

cree of the court, which was plainly intended to reach and operate upon every person who in any capacity might be found to have been connected with the wrongful acts of the defendant corporation, and who had caused or contributed to or profited by the acts enjoined, and who came, by notice or knowledge, within the operation of the terms of the decree.     Oscar A. De Long, by changing his coat, could not change his condition.     He was still bound by the decree.     Being enjoined as a corporate officer from perpetrating a wrong, he cannot be permitted as an individual to continue to perpetrate the same wrong.     The purpose of the decree was to act upon every individual who had notice of the injunction, and to stop him, as well as the artificial entity,—the corporation,—which only acted through such individuals.     It would open the door to the successful evasion of all injunctions of this character against corporations if its members or officers were to be permitted, by device of any kind, to say that they have separated themselves from the corporation, and, as individuals, are carrying on the business which they were prohibited from doing under the corporate form.     This question was up and disposed of in the case of Morton v. Superior Court, 85 Cal. 496, 4 Pac. 489.     In that case, by decree of the court, a corporation organized for irrigation purposes was required to remove a certain dam; and it and its officers, agents, and employés, and all persons acting under it, were enjoined from continuing or maintaining the same.     The dam was removed pursuant to the requirements of that mandatory decree. The president of the corporation enjoined resigned his office, transferred all his stock, and entered into an arrangement with a third party for the purchase of the land upon which the dam had stood, rebuilt it, and claimed the right to keep it there, because neither he nor the person from whom he bought the land were parties to the suit.     This act was held by the court in which the decree was rendered to be a contempt.     An application was made by petition to the supreme court for a writ of certiorari to review the decision of the court below; and it was held by the supreme court that the petitioner had full notice and knowledge of the issuance and service of the injunction; that an officer of a corporation undoubtedly has a right to sever his connection with the corporation, but he will not be permitted to exercise his right for the mere purpose of treating with contempt the orders and decrees of a court which he is bound to respect.

A quotation is made from the case of People v. Pendleton, 64 N. Y. 624, that:

"Injunction orders must be fairly and honestly obeyed, and not defeated by subterfuge and tricks on the part of those bound to obey them.     They may be violated by aiding, countenancing, and abetting others in violation thereof, as well as doing it directly; and courts do not look with indulgence upon schemes, however skillfully devised, designed to thwart their orders."

In the case at bar it is conceded that if Oscar A. De Long, separating himself altogether from the De Long Hook & Eye Company, and without any intent or design upon his part to carry on as an individual that same business which under the corporate form and guise he had been substantially carrying on for himself before,.

went into the market with his manufactured goods, exposed them for sale in such a way as would not lead purchasers to believe they were the manufactures of the plaintiffs, kept himself free from any deception or imposition, and merely used his own name in his own business, as he had a perfect right to do, there would be no reason for the interference of the court to maintain any right secured to the plaintiffs by the decree. But that is exactly what Oscar A. De Long, as the court below held, did not do. The learned justice found—and found upon sufficient evidence—that the whole of the conduct of Oscar A. De Long subsequent to the entry of the order of the general term modifying the decree of the special term was nothing but a fraudulent evasion of the decree; that, finding that the door to illegitimate competition with the plaintiffs was closed to the corporation, he resorted to a trick and device to open another; and that through that he entered into the same forbidden field of unlawful competition. The learned judge below held, as his written opinion states, that the mere inspection of the packages of goods sold by Oscar A. De Long will exhibit the continuance by him of the fraudulent acts perpetrated by the corporation, and enjoined by the decree, and that he still imposed goods upon the public as the manufactures of the plaintiffs, by having his goods made up in such form and in such a way that they would still appear to be those of the plaintiffs. There was an abundance of evidence before the court to convict Oscar A. De Long of this wrong. The affidavit of Sidonia C. Thurn, an importer of children's cloaks and dresses, who used a great many hooks, shows that she bought, after the making of the decree, at Lord & Taylor's store, certain hooks and eyes which she had sent for as De Long hooks and eyes, intending to purchase those made by plaintiffs. They were brought to her, and she sent them to her workrooms for use. Subsequently, she was informed by one of her workwomen that the hooks were not the same as those she supposed she was buying as De Long hooks; that, after close inspection, she discovered that they were not the same, although they bore the name "Oscar A. De Long's Hook." Mr. Conklin, a buyer for the house of Stern Bros., swore that he had examined the cards of Oscar A. De Long hooks, with the words "Oscar A. De Long Hook" printed on the cards, and he would say without hesitation that the purchasing public would be deceived into the belief that they were the hooks and eyes manufactured by the plaintiffs. And to the same effect is the affidavit of Wilson, a buyer for Altman & Co., and Soloman, a buyer for Wechsler & McNulty, and Rebecchini, a buyer for Ehrich Bros., of New York City. There were, it is true, affidavits presented on the part of Oscar A. De Long to the contrary of those just mentioned; but the court below believed the affiants named, and, so doing, properly found that Oscar A. De Long was still continuing the deception,—was still selling goods put up and prepared in such a way that even experienced persons would be led to believe, without the closest inspection, that Oscar A. De Long's goods were those of the plaintiffs. Here the fraud and the deception are continuous, carried on by a person who was enjoined, and who cannot throw off responsibility by saying: "I have changed

my form, I have ceased to act for a corporation. I am now an individual, and I will defy the court, because I have thus changed my outward appearance."

The order of the court below was right, and should be affirmed, with costs.